UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

OMAR ALI ROLLIE,

      Plaintiff,

      v.

K. BRITTAIN, *et al.*,

      Defendants.

CIVIL ACTION NO. 3:26-cv-00317

(SAPORITO, J.)

## MEMORANDUM

Omar Ali Rollie, a prisoner proceeding *pro se*, has filed an amended complaint against 15 defendants affiliated with the Pennsylvania Department of Corrections. Because the only viable defendant(s) are unidentified "John Doe" medical staff, Rollie will be permitted to request discovery from the Superintendent of SCI-Frackville to identify the relevant individuals. Rollie's motions for appointment of counsel, and to proceed *in forma pauperis*, will be denied without prejudice.

## I. BACKGROUND

Rollie was permitted to file this second amended complaint because his first two complaints did not state a claim for relief. *See* (Docs. 6, 10). The operative complaint alleges as follows: Rollie injured his knee in May 2021 at SCI-Huntingdon. Between May and October 2021, he submitted

numerous sick-call forms but never received a response and "no treatment of any kind was offered nor provided." On August 27, 2021, he was "finally assessed by a medical provider" who prescribed a cortisone injection. On October 7, 2021, he received the prescribed injection and was granted "bottom bunk/bottom tier" housing status based on his injury.

Defendant Yost was the unit manager of Rollie's cell block and was allegedly responsible for moving Rollie to the correct floor. However, there was an "unexplained delay" in moving Rollie from the third floor to the first floor. Rollie filed sick calls and grievances about this issue, alleging that he was in pain and his knee was getting worse. However, almost a year passed during which he was never moved to the first floor. During this time, Rollie continued to receive treatment on his knee, including medication, a knee brace, and a second cortisone injection, and he sustained "a number of falls caused by the inability of his knee to sustain weight and giving way beneath him when he walked." Finally, on October 4, 2022, Rollie was transferred to SCI-Frackville.

On October 5, 2022, Rollie was examined by defendant Dr. Baddick at SCI-Frackville, who recommended an evaluation by an orthopedic

specialist. However, Rollie received no orthopedic appointment or other medical evaluation until March 1, 2023, despite writing several sick call forms and grievances indicating that he was in "serious pain." On February 6, 2023, defendant Warford searched Rollie's cell and "made several comments related to" Rollie's grievances and written requests about medical care and other unspecified issues. Warford allegedly confiscated copies of some of Rollie's legal work and grievances and "intentionally damag[ed] other copies . . . using water."

At the March 1 orthopedic appointment, the specialist recommended a CAT scan, but when Rollie returned to the prison, "[a]ll recommended treatment options, including the CAT scan, were disregarded" by defendants O'Brien and Baddick. Instead, on May 23, Rollie received a "corrective surgical operation." For Rollie's return journey to SCI-Frackville after the surgery, he received "an accommodation to be transported without shackles." However, defendants Maul and Boyer allegedly forced him to descend "greater than two feet" from a transport van while wearing shackles, on the orders of another officer, defendant Taylor.

Despite the surgery, Rollie continued to have issues with his knee.

In August 2023, "defendant B. Herb refused to provide Plaintiff with physical therapy, instead instructing him to 'just walk it off.'" A physical therapist suggested an exercise bike, but none was ever offered to Rollie. On January 10, 2024, Rollie was "permitted to leave" his kitchen job to take medication. However, defendant Stantis stopped him and told him that if he left, he would be fired from the job and receive a misconduct citation.

Between May and August 2024, Rollie made "numerous complaints to medical staff" about worsening pain in his knee, but received no responses, and there was allegedly "a complete lack of treatment" during this period. However, on August 12, 2024, he was taken to an appointment at Geisinger Medical Center. The following day, an appointment with defendant Mummey of the prison medical staff as cancelled and never rescheduled, after Mummey "claimed that he was unable to locate [Rollie's] paperwork."

In November 2025, Rollie was transferred to SCI-Smithfield. On December 11, 2025, he was seen by a nurse, who ordered an X-ray that showed "moderate degenerative changes" in his knee. Rollie began physical therapy in April 2026. However, on June 12, 2026, an MRI

allegedly revealed a "low-grade tear of the free edge of the outer rim of the meniscus on the inner side of the knee."

In addition to his medical complaints, Rollie lists a series of incidents that he attributes to retaliation for writing prison grievances. First, in February 2024, he was relocated to the "grind-up cell," which staff commonly assigned to inmates as punishment. This cell "was unreasonably filthy," had a broken window that allowed cold air into the cell, and had rusted and broken furniture. Rollie does not say how long he was in the grind-up cell. On March 29, 2024, defendant Rosa "loosely indicated that further retaliation would befall Plaintiff unless he agreed to [withdraw] the grievances that he had submitted, stating that it would 'be in [Plaintiff's] best interests' to withdraw them." On April 5, defendant Peters "explicitly threatened continued and more harsh retaliation, even threatening that physical harm would come to [Rollie] if he continued to submit Inmate Grievances" and that "nobody could protect" Rollie.

In July 2024, Rollie filed a grievance complaining that "several visits [were] unjustifiably cancelled." On September 30, 2024, he allegedly "requested his medical records and was denied." In December

2024, legal mail was allegedly "opened and read outside of [Rollie's] presence." In May 2025, he received "incorrect medication" after requesting a refill, and his "'incentive-based transfer' was denied without reason." Rollie does not identify who was responsible for any of these actions, but he alleges that a unit manager "admitted . . . that the transfer had been intentionally interfered with."

Ultimately, Rollie asserts Eighth Amendment deliberate indifference claims against Mummey, Herb, Baddick, O'Brien, Stantis, Taylor, Maul, Boyer, Yost and three John Doe defendants; and First Amendment retaliation claims against Rosa, Peters, and Warford.

## II.  LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions concerning prison conditions. *See* 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of*

*Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted

inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quotation omitted).

Rollie's constitutional claims fall under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim."

*Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.   DISCUSSION

### A. Statute of Limitations

As an initial matter, some of Rollie's claims arising between May 2021 and February 2023 are time-barred. A Section 1983 claim must be filed within the limitation period for personal injury tort law in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, a Section 1983 claim must be brought within two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)). The two-year period begins "when the plaintiff knew or should have known of the injury upon which its action is based." *Kach*, 589 F.3d at 634 (citing *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)).

Even assuming an appropriate length of time for Rollie to pursue

administrative remedies, it is apparent that the statute of limitations for constitutional claims accruing prior to March 2023 has elapsed. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (dismissal is appropriate "when the statute of limitations defense is apparent on the face of the complaint"). Therefore, Rollie's claims about the denial of "bottom tier/bottom bunk" placement at SCI-Huntingdon from October 2021 to October 2022, and his claim of a retaliatory cell search in February 2023, must be dismissed.[1]

### B. Eighth Amendment

Rollie brings Eighth Amendment claims against twelve defendants. First, he asserts claims against Mummey, Herb, Baddick, and O'Brien "for failing to provide treatment for [his] knee injury." For an Eighth Amendment claim based on inadequacy or denial of medical care, a plaintiff must allege facts plausibly showing that he had a serious

---

[1] Rollie's initial complaint was dated February 2, 2026, but he did not raise his tier placement and cell search claims until he filed the operative complaint, which is dated June 23, 2026.

We have also considered whether some of Rollie's medical care claims could be subject to dismissal for the same reasons. Because the complaint could support an inference that the challenged conduct was part of a "continuing practice" justifying an "equitable exception to the timely filing requirement," *see Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001), we decline to dismiss any further claims on these grounds.

medical need and that the defendant was deliberately indifferent to that need. *See Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). Courts have found deliberate indifference where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

Rollie's allegations do not support his claim that Baddick and O'Brien deliberately "failed to provide treatment."[2] In October 2022, Baddick recommended an orthopedic appointment that did not occur until March 2023; however, the complaint does not indicate that Baddick

---

[2] In determining whether the operative complaint states a viable claim, we disregard allegations made in all prior complaints. *See Argentina v. Gillette*, 778 F. Appx 173, 175 n.3 (3d Cir. 2019). However, we note that Rollie's repeated claims of "failure to provide treatment" seem to directly contradict his prior complaints. Initially, he complained that he was being "treated like a lab rat" because he received "three cortisone shots in [a 15-]month span" and "multiple different meds and steroids" (Doc. 1 at 4); later, he alleged that he was receiving medication but that it was "ineffective." (Doc. 8 at 8). Rollie is advised that by signing and mailing a complaint to the Court, he is certifying that his claims are not frivolous and that his factual allegations are likely to be supported by evidence. *See* Fed. R. Civ. P. 11.

and O'Brien were responsible for this delay, or if they were, that the delay was imposed for a "non-medical reason." The fact that Rollie had to wait several months, while frustrating, is not itself a constitutional violation. *See, e.g., Holliday v. Centurion Med.*, No. 25-2886, 2026 WL 1416523, at *2 (3d Cir. May 20, 2026); *Mark v. Patton*, 696 F. App'x 579, 581 (3d Cir. 2017). That Baddick and/or O'Brien "disregarded" the specialist's recommendations and ultimately arranged "a corrective surgical operation . . . despite a lack of diagnosis or image testing" does not suggest a constitutional violation. A difference of medical opinion, even accompanied by a "failure to perform x-rays or order additional diagnostic tests," would not show deliberate indifference.[3] *Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir. 2013); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("There may, for example, be several acceptable ways to treat an illness.").

Rollie lists several other Eighth Amendment claims based on his knee issues, but he provides no basis to infer that the corresponding

---

[3] Nothing in the complaint suggests that Baddick and O'Brien subjectively believed that the surgery was inappropriate to address Rollie's knee issues.

defendants perceived a serious medical need. Mummey's alleged failure to reschedule an appointment that was cancelled due to a lack of "paperwork," although possibly careless or negligent, does not show that Mummey knew of the nature of Rollie's injury or perceived a need for urgent attention. In August 2023, Herb allegedly "refused to provide Plaintiff with physical therapy" and told him to "just walk it off," but Rollie does not plausibly explain how Herb was aware of the nature or severity of his injury, that Herb was responsible for arranging physical therapy for Rollie[4], or even that physical therapy had been medically indicated for him at that time.

Rollie's claims against non-medical defendants are flawed for similar reasons. Stantis allegedly refused to release Rollie from his kitchen job to take medication, but the complaint does not indicate that Stantis knew of the nature of Rollie's medical condition, the purportedly urgent need for medication, or even that Rollie had been "permitted" to

---

[4] Rollie broadly alleges that Herb and three other defendants were "medical professionals in positions of authority [with] the ability to order, provide and/or obtain proper treatment for Plaintiff [and] the ongoing obligation to do so." (Doc. 21 at 26). Inferring from this statement that Herb was somehow involved in Rollie's medical care, it does not follow that it was Herb's job to "provide [Rollie] with physical therapy."

leave work.[5] Even if defendants Taylor, Maul, and Boyer forced him to wear shackles while descending from the transport van after surgery, Rollie's complaint does not indicate that they knew of the contrary "accommodation" he had allegedly received.[6]

The complaint does suggest a potential claim against the John Doe defendant or defendants who allegedly "ignor[ed] Plaintiff's 'sick-call' forms and reports of serious pain" at SCI-Frackville. The use of placeholder defendants "is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009). However, it does not appear that the complaint contains sufficient information to serve the John Doe defendants. Because there are no other viable defendants at this stage, we will add Kathy Brittain, the Superintendent of SCI-Frackville, as a defendant for the limited purpose of identifying

---

[5] Rollie asserts a claim against Stantis for "forcing [Rollie] to undergo unreasonably strenuous activity" (Doc. 21 at 16), but he never describes what activity he was forced to do or how it was unreasonably strenuous; he simply alleges that "he was permitted to leave" his job and that Stantis threatened to fire him and issue a misconduct if he did. *See* (*id.* at 22-23).

[6] Rollie also does not describe any significant injury from this descent, although he states that it "impos[ed] unnecessary pain."

the relevant medical staff through discovery. *See*, *e.g.*, *Murray v. Ohio Dep't of Corr.*, No. 1:14-CV-168, 2014 WL 1382401, at \*4 (S.D. Ohio Apr. 8, 2014); *Mosby v. Doe*, No. 08-CV-677, 2009 WL 192502, at \*1 (W.D. Wis. Jan. 27, 2009). Rollie will have 90 days in which to provide this information and/or file an amended complaint against these defendants.

### C. First Amendment

Rollie's First Amendment retaliation claims will be dismissed. To state a *prima facie* case of First Amendment retaliation, the complaint must support an inference that the protected conduct was a "substantial or motivating factor" in a prison official's decision to take adverse action against him. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)). "[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity" for purposes of a retaliation claim. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). Causation can be shown through "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be

established "from the evidence gleaned from the record as a whole." *Id.*

Rollie asserts retaliation claims against defendants Rosa and Peters, but he has not identified an adverse action (or indeed, any action at all) that either defendant took against him. These defendants allegedly made "threats" of potential retaliation, *see* (Doc. 21 at 23-24); such comments, although deplorable, are not themselves adverse actions. *See Burgos v. Canino*, 358 F. App'x 302, 306-07 (3d Cir. 2009) ("Mere threats do not constitute retaliation."). Rollie attributes a list of actions by unspecified prison officials to "retaliation," but there are no facts showing how any of these actions were in anyway related to Rosa, Peters, or his grievances. *See, e.g., Smith v. Price*, No. 3:11-CV-1581, 2012 WL 6541008, at *17 (M.D. Pa. Nov. 21, 2012) (complaint reflected "a preternatural, global, subjective sensitivity to alleged retaliation, with [the plaintiff] ascribing some retaliatory motive to virtually every action that occurs at the prison"); *see also Nunez v. Wetzel*, No. 1:21-CV-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (in general, retaliation is not plausibly inferred if the alleged retaliator was not the target of the protected activity).

## IV.    APPOINTMENT OF COUNSEL/IN FORMA PAUPERIS STATUS

Rollie has also filed a letter requesting appointment of counsel[7]
(Doc. 20) and two motions to proceed *in forma pauperis* ("IFP") (Docs. 11,
13). Although he has already paid the filing fee, he explicitly seeks IFP
status to establish his eligibility for appointment of counsel. In certain
circumstances, a federal court can request that an attorney represent an
indigent person on a *pro bono* basis; however, a plaintiff is not entitled to
volunteer counsel in a civil case merely by claiming indigency. *See* 28
U.S.C. § 1915(e)(1); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir.
2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

Appointment of counsel would not be appropriate at this stage
because Rollie has not yet stated a viable claim against an identified
defendant.[8] *See Tabron*, 6 F.3d at 155 (appointment of counsel is

---

[7] Although his letter is styled as a request for "reconsideration,"
Rollie does not challenge the basis for the prior denial, namely that he
had not filed a viable complaint nor sought leave to proceed *in forma
pauperis*. We construe Rollie's letter as a renewed request for
appointment of counsel based on his amended complaint, new allegations
in the letter, and his new requests to proceed *in forma pauperis*.

[8] In addition, Rollie's letter does not explain why he is unable to
litigate this case on his own. He explains that he paid another inmate to
draft his amended complaint, which led to delays in filing it; however, his

*(continued on next page)*

appropriate only if the complaint has arguable merit in fact and law). Because he has already paid the filing fee, any claimed indigency is not currently limiting Rollie's ability to litigate this case, so his motions to proceed IFP will be denied without prejudice. *See, e.g., Rodriguez v. CP Dev., Inc.*, No. 20-CV-1672, 2022 WL 125388 (W.D. Pa. Jan. 13, 2022) (request for IFP status deemed moot after plaintiff paid the filing fee). As explained above, Rollie will have the opportunity to request discovery to identify prospective defendants. If it appears that appointment of counsel would be warranted during this process, or at a later stage in the case, Rollie will be given the opportunity to establish his financial eligibility.

## V.    CONCLUSION

The only potentially viable claims in Rollie's complaint are against John Doe defendant(s) who allegedly failed to respond to his sick call requests. Accordingly, all other claims will be dismissed, and the Superintendent of SCI-Frackville will be named as a defendant for the limited purpose of identifying the defendants through discovery. Rollie

---

willingness to pay another inmate does not itself show that appointment of counsel would be warranted. Rather, the decision would be based on Rollie's own capabilities and the nature of the disputed issues in the case, among other factors. *See Tabron*, 6 F.3d at 155-57.

will be directed to serve counsel for the Superintendent with discovery request(s), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, to learn the names and addresses of medical staff who allegedly refused to respond to his sick call requests at SCI-Frackville. *See*, *e.g.*, *Rasheed v. Saez*, No. 3:20-CV-00154, 2021 WL 1197682, at \*4 (M.D. Pa. Mar. 30, 2021). Rollie's requests for appointment of counsel and to proceed IFP will be denied without prejudice.

An appropriate order follows.

Dated: July 8, 2026                 *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States District Judge